IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3185-FL

| | |
|---|---|
| STANLEY EARL CORBETT, JR., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| ALVIN KELLER, JR.; G.J. BRANKER; | ) ORDER |
| JANE POWELL;[1] ALVIN B. | ) |
| SAUNDERS;[2] KARAN DILLOW;[3] DR. | ) |
| MICHAEL J. LARSON;[4] and DR. | ) |
| JOSEPH M. LIGHTSEY, | ) |
| | ) |
| Defendants. | ) |

The matter comes before the court on the respective motions to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) of defendants Warden G.J. Branker ("Branker") (DE # 13), Superintendent Alvin Keller ("Keller") (DE # 13), A.B. Saunders ("Saunders") (DE # 18), Dr. Joseph M. Lightsey ("Lightsey") (DE # 28), and Jane Powell ("Powell") (DE # 47). Also before the court are the respective motions to dismiss pursuant to Rule 12(b)(5) and (6) filed by defendants Karan Dillow ("Dillow") (DE # 20) and Dr. Michael J. Larson ("Larson") (DE # 22). Plaintiff

---

[1] The party identified by plaintiff as Nurse Powell has informed the court that the correct spelling of her name is Jane Powell. The court hereinafter will refer to this party as Jane Powell.

[2] The party identified by plaintiff as A.B. Saunders has informed the court that the correct spelling of his name is Alvin B. Saunders. The court will hereinafter refer to this party as Alvin B. Saunders.

[3] The party identified by plaintiff as Karan Dillard has informed the court that the correct spelling of her name is Karan Dillow. The court will hereinafter refer to this party as Karan Dillow.

[4] The party identified by plaintiff as Dr. M. Larsen has informed the court that the correct spelling of his name is Dr. Michael Larson. The court will hereinafter refer to this party as Dr. Michael Larson.

responded to defendants' respective motions to dismiss, except for the motion filed by Larson. Plaintiff also filed a motion to amend (DE # 31), to which defendants did not respond. In this posture, the issues raised are ripe for adjudication. For the following reasons, the court grants the motions to dismiss filed by Keller, Branker, Dillow, and Saunders. The court additionally grants the remaining defendants' motion to dismiss plaintiff's negligence claims. The court also grants in part and denies in part the remaining portion of Lightsey's motion to dismiss. Finally, the court denies the remaining portions of the motions to dismiss filed by Larson and Powell.

## STATEMENT OF THE CASE

On October 14, 2010, plaintiff filed this action pursuant to 42 U.S.C. § 1983, alleging that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Plaintiff subsequently filed a motion for leave to file an amended complaint to correct clerical errors, which the court allowed.

Defendants each filed a motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. The motions to dismiss filed by Dillow and Larson both additionally argue that plaintiff's action against them should be dismissed pursuant to Rule 12(b)(5) for failure to obtain service of process. After moving for an extension of time to respond to each motion, plaintiff filed a response to the respective motions to dismiss, except for the motion filed by Larson.

## STATEMENT OF FACTS

Viewing the facts in the light most favorable to plaintiff, plaintiff makes the following allegations. On October 19, 2008, and December 19, 2008, plaintiff was involved in two altercations

2

with prison staff at Central Prison. Since the time of the altercations, plaintiff has suffered headaches along with pain in his back, shoulder, and chest.

On November 12, 2008, plaintiff attended an appointment with Lightsey after submitting a sick-call request complaining about his chronic pain and numbness in his wrists, thumbs, and "point fingers." Compl. Ex. B. Lightsey informed plaintiff that he would provide him medication to address his pain,[5] but that he could not assist plaintiff with his numbness. Id. As a result, plaintiff requested an appointment to see a neurologist. Id. In response, prison officials stated that Lightsey did not prescribe pain medication because plaintiff already was prescribed Percogesic, which plaintiff states did not alleviate his pain. Id.

On November 15, 2008, plaintiff submitted a sick-call request complaining of continued numbness, as well as pain in his chest, back, and left shoulder. Id. Ex. C. On November 20, 2008, medical staff responded that the last time plaintiff received his prescribed Percogesic was October 23, 2008. Id. Medical staff further noted that plaintiff's Percogesic medication needed to be refilled. Id.

On January 20, 2009, plaintiff visited sick-call and discovered that someone had forged his signature on the medication sheet for his Clinoril prescription. Nurses Goins and Pepi[6] informed plaintiff that he had signed the medication sheet and received his Clinoril. Plaintiff disputes the nurses' assertions and contends that they forged his signature on the medication sheet.

---

[5] Plaintiff alleges Lightsey subsequently provided plaintiff with medication for dry skin and bumps, which did not address his pain.

[6] Nurses Goins and Pepi are not parties to this action.

3

Lightsey eventually prescribed plaintiff Tegretol for his numbness. On March 18, 2009, Lightsey continued plaintiff's Tegretol prescription, and ordered that it be taken twice per day. In December 2009, Lightsey prescribed plaintiff Propoxyphene (Darvon), a narcotic, to treat his pain.

At some point, plaintiff entered the mental health unit at Central Prison. In March 2010, a physician in the mental health unit discontinued plaintiff's Darvon prescription. When plaintiff inquired into why the physician discontinued his Darvon, a nurse responded that he was on too many medications. Plaintiff informed Larson about the situation, and Larson responded that he would re-order plaintiff Darvon. However, Larson did not re-order the medication.[7]

Upon his release from the mental health unit, plaintiff sought a re-fill of Darvon from Lightsey on the grounds that Darvon was the only medication that provided him pain relief. Plaintiff, however, was not successful in getting a re-fill of Darvon. Plaintiff also requested that his physical therapy be continued, but his request was denied.

On April 3, 2010, while plaintiff again was housed in the mental health unit, a metal light cover fell onto his head resulting in a wound to his forehead. Plaintiff subsequently was transported to Wake Med Hospital for treatment. The treating nurse instructed plaintiff to return to the hospital if he experienced continued pain or puss in his wound. Plaintiff experienced these symptoms upon returning to Central Prison and informed Larson of his condition. However, Larson refused to provide treatment.

---

[7] Plaintiff further alleges that the medical staff would not allow him to keep his "self-med" in his room while he was housed in the mental health unit. Instead, the nurses brought plaintiff his "self-meds."

4

On May 16, 2010, plaintiff declared a medical emergency due to his head injury, as well as his back and left shoulder pain. Central Prison medical staff denied plaintiff's request for emergency treatment on the grounds that his condition was not life threatening.

On June 30, 2010, plaintiff saw Lightsey for treatment of rashes on his arms and arm pits. Lightsey prescribed medication for plaintiff's back, but not for his arms.

On August 12, 2010, Lightsey decreased plaintiff's Tegretol prescription to one tablet per day to be taken at nighttime for the observance of Ramadan. Lightsey continued to reduce plaintiff's Tegretol after the conclusion of Ramadan and eventually refused to re-fill his prescription on September 9, 2010, despite his request for the medication.

On September 10, 2010, plaintiff attended an appointment with an orthopedic specialist at Central Prison. Lightsey informed plaintiff that he was referring him to the orthopedic specialist for treatment of his back and left shoulder.[8] The orthopedic specialist, however, informed plaintiff that he was instructed to treat plaintiff's left shoulder.

On September 15, 2010, plaintiff attended an appointment with Lightsey. During plaintiff's appointment, Powell[9] and nurse Goins told Lightsey that there was nothing wrong with him. Powell additionally informed Lightsey that plaintiff was refusing sick-call appointments. Powell refused to schedule appointments to see a physician following his sick-call requests and that there was a two to three week delay in scheduling his appointments to see a physician. Finally, Powell encouraged

---

[8] Plaintiff states that Lightsey delayed two years in sending plaintiff to an orthopedic specialist for his left shoulder. Plaintiff states that Lightsey still has not referred plaintiff to an orthopedic specialist for his back. Plaintiff further states that Lightsey told him for a year that he was going to send him for magnetic resonance imaging on his back, left shoulder, and head.

[9] Plaintiff states that Powell denied and delayed him access to sick-call appointments. Plaintiff states that on some occasions it took two to three weeks of writing sick-call requests to obtain an appointment with a physician. Finally, plaintiff states that Powell is aware that his injuries are significant and require the care of a physician or specialist.

5

her co-workers to delay plaintiff's prescription for Acetaminophen for nearly three months. Plaintiff states that Powell's actions were taken in retaliation for writing grievances against medical staff and civil complaints against her co-workers.

## DISCUSSION

A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." Republican Party v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). A claim is stated if the complaint contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' " Ashcroft v. Iqbal, 556 U.S. ----, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In evaluating whether a claim is stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, . . . bare assertions devoid of further factual enhancement[,] . . . unwarranted inferences, unreasonable conclusions, or arguments." Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc., 591 F.3d 250, 255 (4th Cir. 2009) (citations omitted). In other words, this plausibility standard requires a plaintiff to articulate facts, that, when accepted as true, demonstrate that the plaintiff has stated a claim that makes it plausible he is entitled to relief. Francis v. Giacomelli, 588 F.3d 186, 193 (4th Cir. 2009) (quoting Iqbal, 129 S.Ct. at 1949, and Twombly, 550 U.S. at 557).

6

B.  Analysis

   1.  Motion to Dismiss for Insufficient Service of Process

Larson[10] asserts that he should be dismissed from this action pursuant to Federal Rule of Civil Procedure 12(b)(5) because plaintiff failed to effectuate proper service of process in accordance with Federal Rule of Civil Procedure 4. Proper service of process (or waiver of service under Fed. R. Civ. P. 4(d)) is necessary for the court to exercise personal jurisdiction over a defendant. See Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc., 526 U.S. 344, 350 (1999). Under Rule 4(m), if service of the summons and complaint is not made upon a defendant within one hundred twenty (120) days after the filing of the complaint, the court must dismiss the action without prejudice as to that defendant or direct that service be effected within a specified time, unless the plaintiff can show good cause. Fed. R. Civ. P. 4(m).

Rule 4(e)(1) permits a plaintiff to serve individual defendants "pursuant to the law of the state in which the district court is located." Fed. R. Civ. P. 4(e)(1). The North Carolina Rules of Civil Procedure permit service "[b]y mailing a copy of the summons and of the complaint, registered or certified mail, return receipt requested, addressed to the party to be served, and delivering to the addressee." N.C. Gen. Stat. § 1A-1, Rule 4(j)(1)(c). A plaintiff may deliver the documents to defendant's place of employment. See id.; Moore v. Cox, 341 F. Supp. 2d 570, 573 (M.D.N.C. 2004); Waller v. Butkovich, 584 F. Supp. 909, 926 (M.D.N.C. 1984). When a defendant challenges service by certified mail, a plaintiff must submit an affidavit stating that a copy of the summons and complaint was mailed and attach the return receipt indicating that service was received in accordance

---

[10] Dillow also argues that plaintiff's claim against her should be dismissed for failure to obtain service of process. However, as discussed *infra*, the court dismissed plaintiff's claim against Dillow on the grounds that plaintiff failed to state a claim upon which relief may be granted.

7

with N.C. Gen. Stat. § 1-75.10(a)(4). See Moore, 341 F. Supp. 2d. at 573. If the attached return receipt was signed by a person other than the addressee, North Carolina presumes "that the person who received the mail . . . and signed the receipt was an agent of the addressee authorized by appointment or by law to be served or to accept service of process." N.C. Gen. Stat. § 1A-1, Rule 4(j2)(2); see Moore, 341 F. Supp. 2d. at 573; Fender v. Deaton, 130 N.C. App. 657, 662, 503 S.E.2d 707, 710 (1998). A party may rebut this presumption of valid service with "affidavits of more than one person showing unequivocally that proper service was not made upon the person of the defendant." Grimsley v. Nelson, 342 N.C. 542, 545, 467 S.E.2d 92, 94 (1996); see Moore, 341 F. Supp. 2d at 573.

Larson has not shown that service was improper. The United States Marshal filed a return of service on Larson indicating service on him at his place of employment via certified mail, return receipt requested. Larson has presented only his individual affidavit challenging the service, not the "affidavits of more than one person[.]" Grimsley, 342 N.C. at 545, 467 S.E.2d at 94; see Moore, 341 F. Supp. 2d at 573. Because Larson has not overcome the presumption of valid service under North Carolina law, the court denies his motions to dismiss without prejudice to the extent that it is based on improper service.

2. Motions to Dismiss for Failure to State a Claim

Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight

the action was wrongful. Id. In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or shown a violation of a constitutional right at all. See Pearson v. Callahan, __ U.S. __, 129 S.Ct. 808 (2009);[11] Siegert v. Gilley, 500 U.S. 226, 232 (1991); Rogers, 249 F.3d at 286.

      a.     Supervisor Liability

Keller, Branker, Saunders, Powell, and Dillow allege that plaintiff failed to state a claim for supervisor liability against them. These defendants correctly argue that they may not be held liable based upon a theory of *respondeat superior*, because *respondeat superior* generally is inapplicable to § 1983 suits. Ashcroft, 129 S.Ct. at 1948; Monell v. Dep't of Social Services, 436 U.S. 658, 694 (1978). However, a supervisor may be liable for the actions of a subordinate if:

> (1)    the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed 'a pervasive and unreasonable risk" of constitutional injury to citizens like the plaintiff;
>
> (2)    the supervisor's response to that knowledge was so inadequate as to show 'deliberate indifference to or tacit authorization of the alleged offensive practices'; and
>
> (3)    there was an 'affirmative causal link' between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994). Supervisory liability is not established merely by demonstrating that a subordinate was deliberately indifferent to a plaintiff's medical needs. Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990). Furthermore, in medical care claims, supervisory

---

[11] In Pearson, the Supreme Court overruled the mandatory two-step sequence adopted in Saucier v. Katz, 533 U.S. 194 (2001). See Pearson, 129 S. Ct. at 821.

9

officials may rely upon the judgment of the medical staff to determine the course of treatment. See id..

Plaintiff's supervisor liability claim against Branker and Saunders appears to be grounded on their participation in the North Carolina Department of Corrections' inmate grievance process. However, "participation in the administrative remedy procedure is not the type of personal involvement necessary to state a claim based upon supervisor liability." See Abdel-Aziz v. Johns, No. 5:07-CT-3095-FL, 2008 WL 4279696, *3 (E.D.N.C. Sept. 15, 2008) (citing Paige v. Kupec, No. Civ. A. AW-02-3430, 2003 WL 23274357, at *1 (D. Md. Mar. 31, 2003), aff'd, 70 F. App'x 147 (4th Cir. July 31 2003) (per curiam). Moreover, aside from conclusory allegations, plaintiff's allegations ascribe no role for either Branker or Saunders in the alleged injury. Rather, plaintiff alleges that Branker and Saunders, both DOC supervisory officials, are indirectly responsible for the medical staff's alleged deliberate indifference to his medical care. Conclusory allegations are insufficient to state a constitutional claim. White v. White, 886 F.2d 721, 723 (4th Cir. 1989). Based upon the foregoing, plaintiff has failed to state a supervisor liability claim against Branker[12] and Saunders.

As for plaintiff's supervisor liability claims against Keller and Dillow, plaintiff again relies upon conclusory allegations to support his alleged Eighth Amendment violation. However, as stated, conclusory allegations are insufficient to state a constitutional violation. See White, 886 F.2d at 723. Based upon the foregoing, plaintiff has failed to state a supervisor liability claim against Keller and Dillow.

---

[12] The court notes that Branker, as the Secretary of Correction for the Department of Correction, is entitled to rely upon the judgment of medical staff at Central Prison for the provision of plaintiff's medical care. See Miltier, 896 F.2d at 854.

10

Finally, the court addresses plaintiff's supervisor liability claim against Powell. Plaintiff alleges that Powell encouraged her nursing staff to delay re-filling his pain medication prescription for three months, resulting in increased pain and suffering. The court finds that these allegations demonstrate that Powell had notice of plaintiff's medical need and directed her staff to delay responding to his medical need for a period of three months. The court finds these allegations sufficient to state a supervisor liability claim against Powell.[13]

      b.     Eighth Amendment Claims

Plaintiff alleges Larson, Powell, and Lightsey acted with deliberate indifference to his serious medical needs. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one–the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "–and the second prong is subjective–the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

The court begins with the objective prong of the Eighth Amendment test. "[F]or prison conditions to rise to the level of unconstitutional punishment, there must be [objective] evidence of a serious medical and emotional deterioration attributable to the challenged condition." Strickler, 989 F.2d at 1380. In this case, plaintiff alleges that defendants acted with deliberate indifference

---

[13] Given that the court dismissed plaintiff's supervisor liability claims against Keller, Branker, Dillow, and Saunders, the court finds it unnecessary to address their request for qualified immunity.

towards his chronic pain. The court finds that chronic pain constitutes a serious medical need for the purposes of his Eighth Amendment claim for the purposes of a motion to dismiss. See Hall v. Hopkins, No. 7:10-cv-393, 2012 WL 43510, *4 (W.D. Va. Jan. 9, 2012). Thus, plaintiff's allegations satisfy the objective prong of the Eighth Amendment test.

The court next considers the second prong of the Eighth Amendment test–whether defendants acted with deliberate indifference to plaintiff's serious medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir. 1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

i. Lightsey

Plaintiff alleges that Lightsey acted with deliberate indifference to his chronic head, back, shoulder, and chest pain by failing to prescribe adequate pain medication. Plaintiff acknowledges that he received medical care from Lightsey on numerous occasions beginning in October 2008. Plaintiff further acknowledges that Lightsey prescribed him various medications to treat his alleged chronic pain on several occasions. Although plaintiff asserts that Lightsey's efforts were not effective in alleviating his pain, the fact that Lightsey's treatment of plaintiff was not effective does not give rise to a constitutional violation. See e.g., Russell, 528 F.2d at 319; Starling v. United

States, 664 F. Supp. 2d 558, 569-70 (D.S.C. 2009). Moreover, plaintiff's allegations concerning his request for particular medications amounts to nothing more than a disagreement over the proper course of treatment. See e.g., Russell, 528 F.2d at 319. Based upon the foregoing, plaintiff has failed to state a claim for deliberate indifference to his chronic pain against Lightsey.

Plaintiff also alleges that Lightsey acted with deliberate indifference to the numbness in his wrists, thumb, and "point fingers." In support of this claim, plaintiff asserts that he informed Lightsey of his numbness in October 2008, but that Lightsey informed him that he could not provide assistance. Lightsey eventually prescribed plaintiff Tegretol for his numbness in August 2010. See Compl. Ex. B. Plaintiff alleges Lightsey subsequently reduced his Tegretol dose during Ramadan. Plaintiff further states that Lightsey continued to reduce his Tegretol dosage after Ramadan, and eventually refused to re-fill the prescription. Delay of medical treatment or interference with medical treatment may be sufficient to constitute a violation of the Eighth Amendment. See Smith v. Smith, 589 F.3d 736, 739 (4th Cir. 2009); Webb v. Hamidullah, 281 F. App'x 159, 166 (4th Cir. 2008).

Based upon the foregoing, plaintiff's allegations regarding Lightsey's treatment of his numbness state a claim for deliberate indifference against Lightsey. Thus, plaintiff satisfies the subjective prong for his Eighth Amendment claim against Lightsey. Because plaintiff is able to satisfy the objective and subjective prongs of the Eighth Amendment test for this claim against Lightsey, plaintiff has alleged a constitutional violation and Lightsey is not entitled to qualified immunity at this time.

Finally, plaintiff alleges that Lightsey acted with deliberate indifference to his shoulder and back condition. In support of this claim, plaintiff alleges a nearly two year delay in getting treatment from an orthopedist. The court finds these allegations are sufficient to state a claim. Because

13

plaintiff is able to satisfy the objective and subjective prongs of the Eighth Amendment test for his claim against Lightsey, plaintiff has alleged a constitutional violation and Lightsey is not entitled to qualified immunity at this time.

ii. Larson

Plaintiff asserts in his complaint that he was treated at Wake Med hospital for injuries to his head and that he was advised to seek further treatment if he experienced headaches, dizziness, and blurry vision. Plaintiff contends that he experienced these symptoms when he returned to Central Prison mental health unit, but that Larson refused to provide treatment. Plaintiff also alleges that Larson refused to provide him pain medication during this time period. With these allegations, plaintiff contends that Larson actually knew of and disregarded an objectively serious condition, i.e. his head injury and chronic pain. The court finds that these allegations are sufficient to state an Eighth Amendment claim. Because plaintiff is able to satisfy the objective and subjective prongs of the Eighth Amendment test for this claim against Larson, plaintiff has alleged a constitutional violation and Larson is not entitled to qualified immunity at this time.

iii. Powell

Plaintiff alleges Powell repeatedly failed to schedule medical appointments with a physician following his sick-call requests. Plaintiff alleges that Powell's conduct resulted in increased pain. Plaintiff also alleges that, on some occasions, Powell would "waive" his sick-call appointments or wait two to three weeks following his submission of a sick-call request before scheduling an appointment to see the physician. The court finds that these alleged delays in receiving medical treatment are sufficient to state an Eighth Amendment claim for deliberate indifference and satisfy the objective prong of the Eighth Amendment test. Because plaintiff is able to satisfy both the

14

objective and subjective prongs of the Eighth Amendment test, the court finds that he has alleged a constitutional violation and Powell is not entitled to qualified immunity for this claim at this time.

    c.    Retaliation Claim

Plaintiff alleges Powell delayed his referral to a physician and encouraged her staff to delay his medications in retaliation for exercising his right pursuant to the First Amendment to the United States Constitution to file civil lawsuits. For an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, in a retaliation action alleging First Amendment violations, a plaintiff must establish that conduct complained of adversely affected his constitutional rights. ACLU v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). Additionally, a plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74-75.

Here, plaintiff alleges that Powell acted with deliberate indifference to his medical care because he exercised his first amendment right to file a lawsuit against prison officials. The court finds these allegations are sufficient to allege a retaliation claim against Powell, and that Powell is not entitled to qualified immunity for this claim at this time. However, to the extent plaintiff alleges that Powell acted in retaliation for his filing grievances, such allegations fail to state a retaliation claim. See Daye v. Rubenstein, 417 F. App'x 317, 319 (4th Cir. Mar. 17, 2011).

    d.    Negligence Claim

Lightsey, Larson, and Powell move to dismiss plaintiff's state law negligence claim because plaintiff failed to state a claim upon which relief may be granted. North Carolina imposes

15

Case 5:10-ct-03185-FL Document 61 Filed 02/13/12 Page 15 of 18

substantive legal requirements that a person must follow to pursue a medical malpractice claim. See N.C. R. Civ. P. 9(j). Under North Carolina Rule of Civil Procedure 9(j), a plaintiff's medical malpractice complaint must assert that the medical care has been reviewed by a person who is reasonably expected to qualify (or whom the plaintiff will move to qualify) as an expert witness and who is willing to testify that the medical care received by the plaintiff did not comply with the applicable standard of care. See N.C. R. Civ. P. 9(j)(1), (2); see, e.g., Frazier v. Angel Med. Ctr., 308 F. Supp. 2d 671, 676 (W.D.N.C. 2004); Moore v. Pitt County Mem'l Hosp., 139 F. Supp. 2d 712, 713 (E.D.N.C. 2001); Acosta v. Byrum, 180 N.C. App. 562, 572, 638 S.E.2d 246, 253 (2006). Alternatively, the complaint must allege facts establishing negligence under the common-law doctrine of res ipsa loquitur. See N.C. R. Civ. P. 9j(3). Failure to comply with Rule 9(j) is grounds for dismissal of a state medical malpractice claim brought in federal court. See, e.g., Estate of Williams-Moore v. Alliance One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 649 (M.D.N.C. 2004); Frazier, 308 F. Supp. 2d at 676–77; Moore, 139 F. Supp. 2d at 713.

Plaintiff's complaint fails to allege that he obtained certification from an expert willing to testify that his treating medical personnel did not comply with the applicable standard of care. Further, the doctrine of res ipsa loquitur "is allowed only when the occurrence clearly speaks for itself." Diehl v. Koffer, 140 N.C. App. 375, 378, 536 S.E.2d 359, 362 (2000); see, e.g., Tice v. Hall, 310 N.C. 589, 593, 313 S.E.2d 565, 567 (1984) (surgical sponge left in patient's body). In light of the evidence, taken in the light most favorable to plaintiff, the doctrine of res ipsa loquitur does not apply to plaintiff's claim. Thus, plaintiff fails to meet the requirements of Rule 9(j), and his negligence claim is DISMISSED without prejudice.

   e. Punitive Damages

Lightsey, Larson, and Powell argue that plaintiff's claims do not support an award of punitive damages. Punitive damages may be awarded in a § 1983 action under appropriate circumstances to punish violations of constitutional rights. City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267-268 (1981). Punitive damages may be awarded for "conduct that involves 'reckless or callous indifference to the federally protected rights of others,' as well as for conduct motivated by evil intent." Cooper v. Dyke, 814 F.2d 941, 948 (4th Cir. 1987) (quoting Smith v. Wade, 461 U.S. 30, 56 (1983)). The Fourth Circuit has determined that the callous indifference required for punitive damages is the same as the deliberate indifference required for a finding of liability in a § 1983 claim. Cooper, 814 F.2d at 948. Plaintiff alleges deliberate indifference in this case. Thus, he has sufficiently plead punitive damages, and defendants' motion to dismiss plaintiff's claim for punitive damages is DENIED.

## CONCLUSION

Based upon the foregoing, the court rules as follows:

1) Plaintiff's motion to amend (DE # 31) is GRANTED.

2) The motions to dismiss filed by Keller (DE # 13), Branker (DE # 13), Dillow (DE # 20), and Saunders (DE # 18) are GRANTED, and these parties are dismissed from this action.

3) Lightsey's motion to dismiss (DE # 28) is GRANTED in part and DENIED in part. Lightsey's motion is GRANTED as to plaintiff's alleged deliberate indifference to his chronic pain and negligence claims,[14] but is DENIED as to plaintiff's remaining claims against Lightsey.

---

[14] The court notes that plaintiff's negligence claims are DISMISSED without prejudice as to all defendants.

4) Larson's motion to dismiss (DE # 22) is GRANTED in part and DENIED in part. Larson's motion is GRANTED as to plaintiff's negligence claim, but DENIED as to plaintiff's remaining claims. Larson's motion to dismiss pursuant to Rule 12(b)(5) is DISMISSED without prejudice.

5) Powell's motion to dismiss (DE # 47) is GRANTED in part and DENIED in part. Powell's motion is GRANTED as to plaintiff's negligence claim, but DENIED as to plaintiff's remaining claims.

6) The Clerk of Court is DIRECTED to issue an initial order.

SO ORDERED, this the 10th day of February, 2012.

_____
LOUISE W. FLANAGAN
United States District Judge

18

Case 5:10-ct-03185-FL   Document 61   Filed 02/13/12   Page 18 of 18