IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:10-CT-3185-FL

STANLEY EARL CORBETT, JR., )
)
Plaintiff, )
)
v. )                                ORDER
)
ALVIN KELLER, JR.; G.J. BRANKER; )
JANE POWELL;[1] ALVIN B. )
SAUNDERS;[2] KARAN DILLOW;[3] DR. )
MICHAEL J. LARSON;[4] DR. JOSEPH )
M. LIGHTSEY, )
)
Defendants. )

The matter comes before the court on the respective motions for summary judgment pursuant

to Federal Rule of Civil Procedure 56 of defendants Dr. Joseph M. Lightsey ("Lightsey") (DE # 74),

Dr. Michael J. Larson ("Larson") (DE # 82), and nurse Jane Powell ("Powell") (DE # 79). Also

before the court are plaintiff's motion to compel discovery (DE # 71) and defendants' motion for a

protective order (DE # 67). The issues raised have been fully briefed, and the matters are ripe for

adjudication. For the following reasons, the court grants defendants' respective motions for

---

[1] The party identified by plaintiff as Nurse Powell has informed the court that the correct spelling of her name is Jane Powell. The court hereinafter will refer to this party as Jane Powell.

[2] The party identified by plaintiff as A.B. Saunders has informed the court that the correct spelling of his name is Alvin B. Saunders. The court will hereinafter refer to this party as Alvin B. Saunders.

[3] The party identified by plaintiff as Karan Dillard has informed the court that the correct spelling of her name is Karan Dillow. The court will hereinafter refer to this party as Karan Dillow.

[4] The party identified by plaintiff as Dr. M. Larsen has informed the court that the correct spelling of his name is Dr. Michael Larson. The court will hereinafter refer to this party as Dr. Michael Larson.

summary judgment, grants defendants' motion for a protective order, and denies plaintiff's motion to compel discovery.

## STATEMENT OF THE CASE

On October 14, 2010, plaintiff filed this action pursuant to 42 U.S.C. § 1983, against the above-named defendants as well as defendants G.J. Branker ("Branker"), Alvin Keller, Jr. ("Keller"), Karan Dillow ("Dillow"), and Alvin B. Saunders ("Saunders"). Plaintiff alleged that defendants acted with deliberate indifference to his serious medical needs in violation of the Eighth Amendment to the United States Constitution. Plaintiff subsequently filed a motion for leave to file an amended complaint to correct clerical errors, which the court allowed.

Defendants each responded to plaintiff's complaint with a motion to dismiss pursuant to Rule 12(b)(6), arguing that plaintiff failed to state a claim upon which relief may be granted. The motions to dismiss filed by Dillow and Larson both additionally argued that plaintiff's action against them should be dismissed pursuant to Rule 12(b)(5) for failure to obtain service of process. With the exception of the motion to dismiss filed by Larson, the matters were fully briefed.

On February 13, 2012, the court entered an order granting plaintiff's motion to amend, and granting the respective motions to dismiss filed by Keller, Branker, Dillow, and Saunders. The court granted in part and denied in part Lightsey's motion to dismiss. Lightsey's motion was granted as to plaintiff's alleged deliberate indifference to his chronic pain and negligence claims, but denied as to plaintiff's remaining claims. The court also granted in part and denied in part the motions to dismiss filed by Larson and Powell. Larson and Powells' motions to dismiss were granted as to plaintiff's negligence claims against these defendants, but denied as to the remaining claims. Finally,

2

the court directed the Clerk of Court to issue an initial order regarding planning and scheduling, and an initial order and case management order followed.

After the issuance of the court's case management order, defendants filed a motion for a protective order, and plaintiff responded with a motion to compel. The matters were fully briefed.

Lightsey, Powell, and Larson subsequently filed respective motions for summary judgment, arguing that plaintiff cannot establish an Eighth Amendment claim. In the alternative, these defendants assert the defense of qualified immunity. The matters were fully briefed.

## STATEMENT OF FACTS

Viewing the allegations in the light most favorable to plaintiff, the facts are as follows. Plaintiff's complaint relates to the medical treatment he received at Central Prison following two alleged use of force incidents on October 19, 2008, and December 19, 2008. Lightsey Aff. ¶ 6.

Approximately eight hours after the first alleged use of force incident on October 19, 2008, plaintiff complained of generalized body aches and a nurse examined him. Id. ¶ 8. Upon examining plaintiff, the nurse noted that plaintiff complained of soreness in his back, chest, and wrist, but that plaintiff did not have any bruises or obvious distress. Id. The nurse provided plaintiff with Ibuprofen and instructed him to notify custody if his medical condition did not improve within one hour. Id. Plaintiff did not express any further complaints that day. Id.

On October 24, 2008, a nurse examined plaintiff in response to a sick call request complaining of headaches, as well as pain in his left shoulder, chest, and back. Id. ¶ 9. The nurse noted that plaintiff was taking Naproxen and Percogesic for pain relief. Id. The nurse determined that plaintiff's pain medications should be continued, and that plaintiff be provided an analgesic balm for his back and chest pain. Id. and Ex. 4.

3

Plaintiff submitted sick call requests on October 28, 2008, and November 1, 2008, requesting follow-up care for his left shoulder, chest, and back pain. Id. ¶ 10 and Ex. 5. Plaintiff also complained of headaches as well as numbness in his wrists, thumbs, and "point fingers." Id. On November 12, 2008, Lightsey examined plaintiff in response to his complaints. Id. ¶ 12 and Ex. 7. Lightsey diagnosed plaintiff with a rib bruise and ordered an electromagnetic radiation ("x-ray") test of his left shoulder, and a left rib x-ray series. Id.

On November 18, 2008, a nurse reviewed a November 14, 2008, sick call request submitted by plaintiff in which plaintiff requested pain medication and a referral to see a neurologist. Id. ¶ 13. The nurse noted that plaintiff had been seen by a physician recently, and that medication (in addition to plaintiff's prescription for Percogesic) was ordered. Id. The nurse did not refer plaintiff to a physician. Id. Plaintiff submitted two nearly identical sick call request forms on November 15, 2008, and November 16, 2008. Id. The nurse noted that plaintiff's x-ray results had been ordered, and that she would follow up with the doctor when the results were received. Id. ¶ 14 and Ex. 9.

On December 3, 2008, Nurse Practitioner Madonna Goodwin ("Goodwin") (not a party to this action) examined plaintiff. Id. ¶ 17 and Ex. 10. Goodwin replaced plaintiff's Percogesic prescription with Clinoril. Id. Goodwin also submitted a Utilization Review Board ("URB") request for an orthopedic consultation, which was denied. The utilization reviewer explained that plaintiff's condition could be treated conservatively with pain control. Id. and Exs. 10, 11.

On December 17, 2008, Lightsey reviewed plaintiff's x-ray test results. Id. ¶ 15 and Ex. 7. Plaintiff's left shoulder x-ray revealed no significant bone abnormality. Id. Plaintiff's chest x-ray showed no acute findings or acute cardiopulmonary disease. Id. Finally, plaintiff's rib x-ray series was negative and no left rib fracture was evident. Id.

4

Plaintiff again complained of headaches, as well as, continued pain in his left shoulder, chest, and back. Id. ¶ 18 and Ex. 12. Plaintiff was seen by a nurse on December 9, 2008, and referred to a physician for evaluation. Id.

Plaintiff was involved in the second use of force incident on December 19, 2008. Id. ¶ 19. Plaintiff was medically screened following the use of force incident, and the nurse noted abrasions on his right wrist and elbow, as well as a scratch on his left lower breast area and redness on his chest. Id. Finally, the nurse noted plaintiff complained of left shoulder, chest, and back pain. Id.

Plaintiff was seen by a nurse on December 30, 2008, in response to complaints of headaches, as well as, continued pain in his left shoulder, chest, and back. Id. ¶ 20 and Ex. 14. Plaintiff also requested a referral to see a neurologist for numbness in his wrists, thumbs, and pointer fingers. Id. The nurse referred plaintiff to Lightsey. Id.

Lightsey examined plaintiff on December 31, 2008. Id. ¶ 21. Lightsey noted that plaintiff's back did not have any obvious signs of spasm or bruising. Id. Lightsey assessed plaintiff with a back bruise and possible neuralgia, and ordered that plaintiff take Medrol Dosepak (a steroid which reduces inflammation) for the next six days. Id. ¶ 21 and Ex. 15.

Plaintiff was seen by a nurse on January 9, 2009, in response to continued complaints of pain. Id. ¶¶ 22, 23. Plaintiff told the nurses that the Medrol Dosepak was not relieving his pain. Id. ¶ 23 and Ex. 17. Both nurses flagged plaintiff's chart for review by a physician. Id. ¶¶ 23-24.

On January 21, 2009, Lightsey reviewed plaintiff's chart for his complaints, and evaluated his request for a different medication. Id. ¶ 25 and Ex. 19. Upon a review of plaintiff's chart, Lightsey determined that there was nothing warranting an alteration of plaintiff's medication. Id. Rather, Lightsey opined that plaintiff's nerve irritation would resolve over time. Id.

5

On January 25, 2009, Powell received and reviewed a sick call appointment request submitted by plaintiff on January 23, 2009. Powell Aff. ¶ 10. Plaintiff again complained of pain and requested an appointment with a neurologist. Id. Powell, acting as the triage nurse, scheduled plaintiff for a sick call appointment on February 3, 2009. Id. Plaintiff attended this appointment and was referred for another appointment with Lightsey. Id.

Lightsey examined plaintiff on February 11, 2009, in response to his continued complaints of pain and request to see a neurologist. Lightsey Aff. ¶ 28 and Ex. 21. Lightsey diagnosed plaintiff with neuralgia and exacerbated back pain. Id. Lightsey prescribed both Ibuprofen and Percogesic for pain management, and scheduled plaintiff for a follow-up appointment. Id.

On February 25, 2009, plaintiff attended a follow-up examination with Lightsey. Id. ¶ 30 and Ex. 23. Following an examination, Lightsey assessed plaintiff with possible neuralgia and ordered both a Medrol Dosepak and Tegretol for two weeks. Id. Lightsey scheduled plaintiff for a follow-up appointment. Id.

Plaintiff attended his follow-up appointment with Lightsey on March 18, 2009. Id. ¶ 33 and Ex. 26. Lightsey noted that plaintiff had non-specific shoulder pain, bilateral numbness in his thumbs and forefinger, and tenderness in both wrists. Id. ¶ 33 and Ex. 26. Lightsey assessed plaintiff with neuralgia without specific distribution, and re-ordered Tegretol. Id. Lightsey also ordered Voltaren. Id. Lightsey renewed plaintiff's Tegretol prescription for an additional six months on April 1, 2009. Id. ¶ 35 and Ex. 28. However, upon further review of plaintiff's chart, Lightsey ordered that plaintiff's Tegretol and Voltaren prescriptions be discontinued and replaced with two tablets of Percogesic due to plaintiff's complaints that the discontinued medications were ineffective. Id.

6

On April 19, 2009, Powell received and reviewed a sick call request submitted by plaintiff in which plaintiff complained of pain. Powell Aff. ¶ 11. Powell referred plaintiff to a nurse who examined plaintiff on April 21, 2009. Id.

Lightsey again examined plaintiff on April 28, 2009. Lightsey Aff. ¶ 37 and Ex. 30. Lightsey noted plaintiff had costochondral (relating to the ribs and their cartilages) tenderness with right knee crepitance (grating or crackling sound) and tenderness in his trapezius muscle. Id. Lightsey assessed plaintiff with costochondritis and arthritis of the hands. Id. In response, Lightsey ordered testing to rule out rheumatoid arthritis.[5] Id. Lightsey also ordered Indometacin to be self-administered in conjunction with Percogesic. Id.

On May 12, 2009, plaintiff was admitted to Central Prison's mental health unit. Id. ¶ 38. Lightsey did not treat plaintiff while plaintiff was in the mental health unit. Id. Upon admission to the mental health unit, medical staff ordered a complete metabolic panel, complete blood count, syphilis test, thyroid test, urinalysis, fasting glucose level, and fasting lipid panel labs. Larson Aff. ¶ 8 and Ex. 5. The following medications also were ordered for plaintiff: Acetaminophen; milk of magnesia; house antacid, Ibuprofen; Fluoxetine; and Vistaril. Id. The admitting physician noted that plaintiff complained of chronic back pain. Id.

Larson first evaluated plaintiff on May 12, 2009. Id. ¶ 10. Larson did not note any acute medical problems. Id. Plaintiff was discharged from the mental health unit on May 18, 2009, and instructed to return to unit one with all prescribed medications. Id. ¶ 18.

On May 19, 2009, and May 25, 2009, plaintiff submitted sick call requests requesting that his medications, which were discontinued when he was admitted to the mental health unit, be

---

[5] Defendants represent that they could not locate the results of the rheumatoid arthritis tests. Lightsey Aff. ¶ 37.

7

reinstated. Lightsey Aff. ¶ 39 and Ex. 31. That same day, a nurse responded to plaintiff that a camp physician would review his chart. Id. On June 3, 2009, Lightsey conducted a review of plaintiff's chart, and directed that the following medications be ordered: Erythromycin; Percogesic; Indometacin; and T-Gel Shampoo. Id. ¶ 40 and Ex. 32.

In response to plaintiff's representations to the nursing staff that Tegretol was effective in controlling his pain, Lightsey ordered that plaintiff's Tegretol prescription be re-instated on June 17, 2009. Id. ¶¶ 41-42. Plaintiff thereafter was seen by the nursing staff in response to plaintiff's complaints of pain on July 6, 2009, and August 3, 2009.[6] Id. ¶¶ 43-44 and Exs. 35-36.

Lightsey examined plaintiff on August 5, 2009. Id. ¶ 45. During this examination, plaintiff complained of cramping of his left hip, posterior, and pelvic area, and numbness in both hands. Id. ¶ 45 and Ex. 37. Lightsey assessed plaintiff with arthritis, and ordered x-rays of plaintiff's lumbar spine to rule out any herniated disk nucleus pulposus. Id. Lightsey also ordered x-rays of both of plaintiff's hips to rule out avascular necrosis and arthritis. Id. Plaintiff's test results did not show any abnormalities. Id. ¶ 46 and Ex. 38.

On August 26, 2011, Lightsey reviewed plaintiff's chart in response to plaintiff's request for Erythromycin and to discontinue his Percogesic and Indocin prescriptions. Id. ¶ 48 and Ex. 39. Based upon Lightsey's review of plaintiff's chart and medications, Lightsey re-ordered Erythromycin and discontinued Percogesic and Indocin. Lightsey also ordered Darvon to address plaintiff's complaints of pain. Id.

---

[6] The court notes that Powell received a sick call request from plaintiff complaining about dental issues, and Powell referred plaintiff to a dental clinic appointment on August 17, 2009. Powell Aff. ¶ 12 and Ex. 6.

8

On September 5, 2009, Powell received and reviewed a sick call appointment request from plaintiff complaining of chronic pain and requesting a magnetic resonance imaging ("MRI") test. Powell Aff. ¶ 13. Powell scheduled plaintiff for an appointment to see a nurse. Id. On September 16, 2009, Lightsey reviewed plaintiff's chart in response to plaintiff's continued complaints of chronic pain. Lightsey Aff. ¶ 50 and Ex. 41. Lightsey ordered that plaintiff receive Percogesic and Naproxen. Id. Lightsey also ordered an x-ray of plaintiff's cervical spine to rule out a herniated nucleus pulposus, and a serum westergren sedimentation rate test to check for signs of infection, autoimmune disease, or cancer. Id. Plaintiff's x-ray results were unremarkable. Id. Additionally, plaintiff's medical records reflect that he refused to undergo the ordered labs. Id. Lightsey ordered that plaintiff's Darvon prescription be renewed on September 23, 2009. Id. ¶ 51 and Ex. 42.

On October 14, 2009, plaintiff again was admitted to the mental health unit and was not being treated by Lightsey. Id. ¶ 52 and Ex. 43. On this date, plaintiff was examined by Dr. Ralph Wall ("Dr. Wall"), who assessed plaintiff with, inter alia, chronic shoulder and back pain. Larson Aff. ¶ 20. The following medications were ordered for plaintiff: acetaminophen; milk of magnesia; house antacid; Darvon; Percogesic; Naprosyn; Panoxyl soap; Zoloft; and Vistaril. Id. ¶ 21 and Ex. 15. Plaintiff also was provided with a family nurse practitioner consultation with Goodwin for pain management. Id.

Goodwin saw plaintiff in response to his complaints of pain, and submitted a URB request for physical therapy. Id. Plaintiff's medical records reflect that he refused his dose of Percogesic on October 19, 20, 22, 23, and from October 26 through October 31, 2009. Id. ¶¶ 27, 28, 30, 31, 32 and Exs. 20, 21, 22. Plaintiff complained that the Percogesic made him dizzy. Id. ¶ 32 and Ex. 22. Plaintiff's medications were altered on November 12, 2009, and he was given Naproxen for his

9

chronic back pain. Id. ¶¶ 33, 34 and Exs. 22, 23. Plaintiff was discharged from the mental health unit back to unit one on December 10, 2009. Id. ¶ 39.

On January 6, 2010, Lightsey reviewed plaintiff's chart and ordered the following medications: Darvon; PanOxyl Soap; Hydrocerin Cream; Erythromycin; Tegretol; and Naproxen. Lightsey Aff. ¶ 55 and Ex. 45. Later that same day, Lightsey replaced plaintiff's Erythromycin with Cleocin. Id. Lightsey discontinued plaintiff's prescription for Clindamycin after plaintiff complained that it upset his stomach. Id. ¶ 56 and Ex. 46. Plaintiff subsequently refused to take his daily doses of Darvon and Tegretol on March 17, 2010. Id. ¶ 57 and Ex. 47.

Plaintiff thereafter was seen by a nurse in response to sick call complaints on March 26, 2010, May 4, 2010, and May 25, 2010. Id. ¶¶ 58, 59, 61. Plaintiff complained of continued pain at these appointments. At his March 26, 2010, appointment the nurse, after conducting an examination, suspected plaintiff of malingering. Id. ¶ 58.

On April 3, 2010, plaintiff presented to the Central Prison emergency department complaining that a light fixture fell on his head while he was in his cell, causing an abrasion, headache, dizziness, and blurred vision. Larson Aff. ¶ 47. Plaintiff was given Motrin at Central Prison, and then transported to WakeMed Hospital for further evaluation. Id.

At WakeMed, plaintiff was assessed by a nurse. Id. The nurse noted that there was a 1.5 centimeter vertical superficial abrasion to his right forehead. Id. Plaintiff told the nurse that his dizziness had resolved. Id. The nurse further noted that plaintiff appeared comfortable as he spoke and that he laughed with the guards. Id. Upon discharge, plaintiff was instructed to follow up with his physician as needed. Plaintiff further was instructed to clean his wound with soap and water and to return for treatment if a fever occurred or if there was pus from the wound. Id.

10

Upon his return from WakeMed, plaintiff was sent to the Emergency Department at Central Prison for evaluation. Id. The attending physician noted that plaintiff's dizziness had resolved and that he had an unremarkable neurological examination. Id. The physician also noted that the computed tomography ("CT") scan scheduled at WakeMed was cancelled as unnecessary. Id. Plaintiff was cleared for re-entry to the mental health unit. Id.

On April 5, 2010, plaintiff was given a one-time dose of Tylenol for pain. Id. ¶ 48. The next day, plaintiff complained that his pain medication was not effective, and requested Darvon. Id. ¶ 49. Plaintiff was instructed to speak with his doctor regarding his pain medication. Id. Plaintiff was given similar instruction the following day in response to his complaints of pain. Id. ¶ 50.

On April 9, 2010, Larson examined plaintiff. Id. ¶ 52. Larson did not note any complaints of pain. Id. Later that day, a nurse inquired as to whether plaintiff's request for Darvon had been granted. Id. On April 20, 2010, Larson ordered the following medications: (1) Naprosyn; (2) Zoloft: (3) Erythromycin; (4) Zantac; (5) Benzoyl; (6) Eucerin; and (7) Tegretol. Id. ¶ 54. Plaintiff was discharged from the mental health unit on April 22, 2010. Id. ¶ 57.

On May 13, 2010, Powell received and reviewed two sick call appointment requests from plaintiff in which he complained about continued pain in his left shoulder and back, as well as dizziness, blurred vision, and dark circles under his arms. Powell Aff. ¶ 17 and Ex. 11. Plaintiff also requested T-Gel, a MRI, and Darvon. Id. In response, Powell scheduled a sick call appointment with a nurse to evaluate plaintiff's complaints. Id.

On May 26, 2010, Lightsey examined plaintiff and assessed him with back pain. Lightsey Aff. ¶ 62 and Ex. 52. Lightsey subsequently adjusted plaintiff's medication on May 28, 2010, and plaintiff refused to take his Tegretol doses on May 31, 2010, and June 23, 2010. Id. ¶¶ 63, 64, 66.

11

On June 4, 2010, Powell examined plaintiff following two sick call appointment requests complaining of continued pain in his left shoulder and back, headaches, dizziness, and a rash under his arms and on his stomach. Powell Aff. ¶ 19 and Ex. 13. Powell noted that plaintiff had already been seen for his back pain. Id. Powell instructed plaintiff to continue taking Naprosyn as ordered and to follow up within a week if he did not see any improvement. Id.

On June 29, 2010, Powell received and reviewed a sick call appointment request from plaintiff complaining of continued pain in his left shoulder and back, headaches, dizziness, blurred vision and rash under his arms and on his legs. Id. ¶ 23 and Ex. 17. Plaintiff also requested a MRI. Id. Powell scheduled plaintiff for a sick call appointment on July 2, 2010. Id. Plaintiff was not available on the date of his scheduled appointment, so his appointment was rescheduled for July 8, 2010. Id. Plaintiff refused to attend his July 8, 2010, appointment. Id.

On June 30, 2010, Lightsey examined plaintiff in response to his complaints of left shoulder pain. Lightsey ¶ 67 and Ex. 57. Lightsey assessed plaintiff with bursitis of the left shoulder and ordered the following: (1) an x-ray of his left shoulder; (2) Medrol Dosepak; (3) Dolobid; (4) Flexeril (muscle relaxant); (5) Lotrisone cream; and (6) discontinue Naprosyn. Id. Plaintiff was instructed to return to the medical clinic in two weeks. Id. Plaintiff subsequently refused his Tegretol and Zoloft medications on July 6, 2010. Id. ¶ 68 and Ex. 58.

Plaintiff attended his follow-up appointment with Lightsey on July 14, 2010.[7] Id. ¶ 70. Plaintiff informed Lightsey that he continued to experience pain in his shoulder and back since the 2008 use of force incident, and that his current medications were not effective in managing the pain.

---

[7] Powell also received a sick call appointment request on July 14, 2010. Powell Aff. ¶ 25 and Exs. 16, 18. Powell noted that plaintiff already was scheduled to see Lightsey that day. Id.

Id. Lightsey noted that plaintiff's shoulder did not show any specific signs of swelling or crepitance (crackling or grating sound). Id. Lightsey did note tenderness of the posterior deltoid and pain on abduction. Id. As a result, Lightsey assessed plaintiff with a possible labral tear (injury to the shoulder joint). Id. Lightsey referred plaintiff for an orthopedic consultation, and an appointment was scheduled for September 9, 2010. Id. Lightsey also altered plaintiff's Tegretol prescription on August 12, 2010, so that the medication would not interfere with his fasting in accordance with the customs of Ramadan. Id. ¶ 73 and Ex. 63. Finally, plaintiff refused a medical appointment on August 11, 2010.[8] Id. ¶ 74 and Ex. 64.

On September 9, 2010, plaintiff attended an orthopedic consultation with Dr. Lee Harold Diehl ("Dr. Diehl"). Id. ¶ 77 and Ex. 67. Dr. Diehl noted the following: (1) plaintiff had a history of bursitis since 2005 and an altercation in 2008; (2) plaintiff complained of occasional stiffness and near constant inflammation and discomfort; and (3) plaintiff was taking pain medications which helped and stated that Thera-Band exercises helped manage the pain. Id. Upon examining plaintiff, Dr. Diehl assessed that plaintiff's left shoulder pain was likely intra articular, perhaps a biceps tendon or cuff pathology. Id. Dr. Diehl recommended that plaintiff continue to receive his Thera-Band and non-steroidal anti-inflammatory drugs as needed and recommended a left shoulder MRI. Id. Lightsey submitted a URB request for a MRI, which was approved and scheduled for October 19, 2010. Id.

On September 15, 2010, Lightsey examined plaintiff and reviewed Dr. Diehl's consultation note. Id. ¶ 78 and Ex. 68. Lightsey noted that plaintiff complained of dizziness and continued

---

[8] The court notes that on July 20, 2010, July 26, 2010, August 5, 2010, August 12, 2010, and September 10, 2010, Powell received and reviewed sick call requests from plaintiff. Powell Aff. ¶¶ 27, 29, 30, 32, 37, 39. Powell referred plaintiff for appointments with medical staff on these occasions. Id.

13

shoulder pain, and that plaintiff repeatedly refused his appointments. Id. After examining plaintiff, Lightsey suspected that he was malingering.[9] Id.

Lightsey again saw plaintiff on October 13, 2010, and assessed him with a possible rotator cuff injury and back pain. Id. ¶ 80 and Ex. 70. Lightsey ordered medication to address plaintiff's pain. Id. The results of plaintiff's October 19, 2010, MRI reflected supraspinatus tendinosis and infraspinatus tendinosis. Plaintiff's MRI report also noted "downward sloping of the acromion process, which may contribute to shoulder impingement syndrome." Pl.'s Resp., Attach. p. 13.

## DISCUSSION

A.    Motion for a Protective Order/Motion to Compel

Plaintiff requests the opportunity to engage in discovery. In response, defendants request that the court enter a protective order.

Defendants have raised the defense of qualified immunity in this case. The defense of qualified immunity is "an entitlement not to stand trial or face the other burdens of litigation." Mitchell v. Forsyth, 472 U.S. 511, 526 (1985); see also, Lescs v. Martinsburg Police Dep't, 138 F. App'x 562, 564 (4th Cir. 2005) (per curiam) (holding that the district court was required to rule on defendant's dispositive motion raising qualified immunity issues prior to allowing discovery). In Mitchell, the Court observed that "[u]nless the plaintiff's allegations state a claim of violation of clearly established law, a defendant pleading qualified immunity is entitled to dismissal before the commencement of discovery." Mitchell, 472 U.S. at 526. Because defendants raised the defense of qualified immunity and assert that plaintiff cannot establish a constitutional violation, they are entitled to a resolution of the issue prior to being subject to the burdens of litigation, including

---

[9] A nurse who examined plaintiff on October 7, 2010, made a similar assessment. Id. ¶ 79 and Ex. 69.

14

discovery. Accordingly, the court GRANTS defendants' motion for a protective order, and DENIES plaintiff's motion to compel.

B.     Motions for Summary Judgment

1.     Standard of Review

Summary judgment is appropriate when there exists no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, 477 U.S. 242, 247 (1986). The party seeking summary judgment bears the burden of initially coming forward and demonstrating an absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Once the moving party has met its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact requiring trial. Matsushita Elec. Industrial Co. Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). There is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party. Anderson, 477 U.S. at 250.

2.     Analysis

Defendants assert the defense of qualified immunity. Government officials are entitled to qualified immunity from civil damages so long as "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). Qualified immunity protects government officials "where the law is unsettled or murky." Rogers v. Pendleton, 249 F.3d 279, 286 (4th Cir. 2001). The test is whether the act was clearly forbidden, not whether in hindsight the action was wrongful. Id. In evaluating qualified immunity, a court initially may determine whether the plaintiff has alleged or

15

shown a violation of a constitutional right at all. See Pearson v. Callahan, 555 U.S. 223, 242 (2009).[10]

Plaintiff alleges Larson, Powell, and Lightsey acted with deliberate indifference to his serious medical needs. "In order to make out a *prima facie* case that prison conditions violate the Eighth Amendment, a plaintiff must show both '(1) a serious deprivation of a basic human need; and (2) deliberate indifference to prison conditions on the part of prison officials.' " Strickler v. Waters, 989 F.2d 1375, 1379 (4th Cir. 1993) (quoting Wilson v. Seiter, 501 U.S. 294, 298 (1991)). The Supreme Court has explained that the first prong is an objective one--the prisoner must show that "the deprivation of [a] basic human need was objectively 'sufficiently serious' "--and the second prong is subjective--the prisoner must show that "subjectively 'the officials act[ed] with a sufficiently culpable state of mind.' " See Strickler, 989 F.2d at 1379 (quotations omitted).

Defendants acknowledge that plaintiff's alleged medical condition is sufficiently serious to trigger the objective prong of the Eighth Amendment test. Accordingly, the court focuses on the second prong of the test--whether defendants acted with deliberate indifference to plaintiff's serious medical needs. "Deliberate indifference entails something more than mere negligence, . . . [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." See Farmer v. Brennan, 511 U.S. 825, 835 (1994). It requires that a prison official actually know of and disregard an objectively serious condition, medical need, or risk of harm. Id. at 837; Shakka v. Smith, 71 F.3d 162, 166 (4th Cir. 1995). An inmate is not entitled to choose his course of treatment. See Russell v. Sheffer, 528 F.2d 318, 318-19 (4th Cir.

---

[10]In Pearson, the Supreme Court overruled that part of Saucier v. Katz, 533 U.S. 194 (2001), which mandated that court's conduct the two-step qualified immunity inquiry in sequential order. See Pearson, 555 U.S. at 227.

16

1975) (per curiam). Likewise, mere negligence or malpractice in diagnosis or treatment does not state a constitutional claim. Estelle v. Gamble, 429 U.S. 97, 105-106 (1976); Johnson v. Quinones, 145 F.3d 164, 168 (4th Cir. 1998).

a. Lightsey

Plaintiff alleges that Lightsey acted with deliberate indifference to the numbness in his wrists, thumb, and "point fingers." Plaintiff also alleges that Lightsey acted with deliberate indifference to his shoulder and back pain.

The evidence in the record reflects that from November 12, 2008, through October 14, 2010, plaintiff was evaluated by Lightsey on approximately twelve (12) occasions. In the course of treating plaintiff, Lightsey conducted chart reviews (approximately thirteen (13)), physical examinations, ordered and renewed plaintiff's prescriptions,[11] ordered and reviewed diagnostic tests, and referred plaintiff to specialists, including an orthopedist. The record further reflects that Lightsey was responsive to plaintiff's feedback regarding plaintiff's medications. Finally, plaintiff's medical records reflect that plaintiff was non-compliant with his treatment on several occasions. Accordingly, the record reflects that Lightsey provided continual care for plaintiff's various complaints, and was responsive to plaintiff's medical needs.[12]

Plaintiff, in response to Lightsey's motion for summary judgment, argues that Lightsey's alleged deliberate indifference is illustrated by the fact that plaintiff eventually required shoulder surgery. In support of his claim, plaintiff attached the findings from an August 2, 2012, orthopedic

---

[11] Plaintiff's medical records reflect that Lightsey ordered at least thirteen (13) different medications in an attempt to control plaintiff's pain. Lightsey Aff. ¶ 82.

[12] Plaintiff, in a grievance, admits that he received treatment for many of his medical conditions. Pl.'s Resp., Attach. p. 40.

17

consultation recommending surgery on plaintiff's left shoulder.[13] However, the fact that plaintiff had surgery on his shoulder in 2012 does not establish that Lightsey acted with deliberate indifference to plaintiff's shoulder condition from 2008 through the filing of this action in 2010. In particular, there is no evidence that surgery was recommended during the time period relevant to the complaint, or that Lightsey knew of and disregarded any risk to plaintiff's health. Rather, as stated, plaintiff's medical records reflect that Lightsey examined plaintiff's shoulder on numerous occasions, ordered several diagnostic tests, prescribed several pain medications, and referred him to a specialist. The record further reflects that the results of plaintiff's October 19, 2010, MRI indicated a degenerative condition for which surgery was not recommended at that time. Based upon the foregoing, the court finds that there is no evidence to suggest that Lightsey acted with deliberate indifference to plaintiff's shoulder condition.

Additionally, the fact that Lightsey's treatment of plaintiff may not have been effective does not give rise to a constitutional violation. See e.g., Russell, 528 F.2d at 319; Starling v. United States, 664 F. Supp. 2d 558, 569-70 (D.S.C. 2009); see also, Johnson v. Quinones, 145 F.3d 164, 167 (4th Cir. 1998) (finding that negligent acts are not sufficient to establish a constitutional violation). Moreover, plaintiff's requests for particular medications or to see specialists, such as a neurologist, amount to nothing more than a disagreement over the proper course of treatment. See e.g., Russell, 528 F.2d at 319. It is well settled that such a disagreement does not constitute an Eighth Amendment claim. See Wright v. Collins, 766 F.2d 841, 850 (4th Cir. 1985). Therefore,

_____

[13]The court notes that plaintiff has not amended his complaint to include allegations regarding his 2012 medical care, or any other medical care subsequent to filing this action. Because plaintiff has not moved this court to amend his complaint pursuant to Rule 15(a) to include any new claim, the new claim is not properly before the court. See United States v. Jones, No. 87-7313,1988 WL 21257, *1 (4th Cir. Mar. 9, 1988); Crump v. N.C. Dep't of Corr., No. 3:05CV325-02-MU, 2009 WL 2738459, *5 (W.D.N.C. Aug. 26, 2009).

18

because plaintiff has not established the subjective element of his Eighth Amendment deliberate indifference claim, there is no constitutional violation. Based upon the foregoing, Lightsey is entitled to qualified immunity for plaintiff's claim, and his motion for summary judgment is GRANTED.

                b.     Larson

Plaintiff alleges that he was treated at WakeMed hospital for injuries to his head, and that he was advised to seek further treatment if he experienced headaches, dizziness, and blurry vision. Plaintiff contends that he experienced these symptoms when he returned to Central Prison mental health unit, but that Larson refused to provide treatment. Plaintiff also alleges that Larson refused to provide him pain medication during this time period.

Larson treated plaintiff when plaintiff was admitted to the Central Prison mental health unit during the following time periods: (1) May 12, 2009, through May 18, 2009; (2) October 14, 2009, through December 14, 2009; and (3) March 27, 2010 through April 22, 2010. The record reflects that Larson's involvement with the care administered to inmates housed in the mental health unit primarily is limited to mental health issues. To the extent plaintiff alleges that Larson denied him pain medication while plaintiff was in the mental health unit, the record reflects that plaintiff was given medications, such as Tylenol, to control his pain, but that his narcotic medication was limited to reduce the risk of self-harm. Larson Aff. ¶ 58. Finally, the record reflects that plaintiff was non-compliant and refused to take his prescribed pain medications on several occasions. Id.

As for plaintiff's contention that Larson failed to follow WakeMed's orders following his April 2010 head injury, the record belies plaintiff's claim. In particular, the WakeMed discharge instructions provided that plaintiff's wounds be cleaned with soap and water, and that plaintiff return

19

for treatment if he experienced a fever or pus in his wound. There is no evidence that plaintiff experienced either of these conditions. The record also reflect that plaintiff initially was given Tylenol for pain management, but that Larson prescribed him Tegretol when plaintiff complained that his pain medication was not effective. Accordingly, upon a review of plaintiff's medical records, the court finds that there is no evidence that Larson actually knew of and disregarded plaintiff's medical needs. Rather, it appears that plaintiff disagreed with the medical treatment provided by Larson, which is insufficient to state a constitutional claim. See Wright, 766 F.2d at 850. Based upon the foregoing, Larson is entitled to qualified immunity for plaintiff's claim, and his motion for summary judgment is GRANTED.

c. Powell

Plaintiff alleges Powell repeatedly failed to schedule medical appointments with a physician following his sick-call requests, resulting in increased pain. Plaintiff also alleges that, on some occasions, Powell would "waive" his sick-call appointments or wait two to three weeks following his submission of a sick-call request before scheduling an appointment to see the physician.

The evidence in the record reflects that Powell either treated or scheduled an appointment for plaintiff each time he presented to her with a complaint. As for plaintiff's allegation that Powell failed to inform him of his sick call appointments, DPS policy provides that, once a medical appointment is scheduled, it is the inmate's responsibility to check the posted schedules for the appointment time and other pertinent information. Powell Aff. Ex. 2, p. 4. It also is the inmate's responsibility to report for scheduled medical appointments. Id. There is no evidence in plaintiff's medical records that Powell delayed plaintiff's treatment or appointments. Nor is there any evidence that Powell actually knew of and disregarded plaintiff's medical needs. Based upon the foregoing,

20

Powell is entitled to qualified immunity for plaintiff's claim, and his motion for summary judgment is GRANTED.

          d.     Retaliation Claim

In support of his retaliation claim, plaintiff alleges Powell delayed his referral to a physician and encouraged her staff to delay his medications in retaliation for exercising his right pursuant to the First Amendment to the United States Constitution to file civil lawsuits. For an inmate to state a colorable claim of retaliation, the alleged retaliatory action must have been taken with regard to the exercise of some constitutionally protected right, or the retaliatory action itself must violate such a right. Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). Moreover, in a retaliation action alleging First Amendment violations, a plaintiff must establish that conduct complained of adversely affected his constitutional rights. ACLU v. Wicomico County, 999 F.2d 780, 785 (4th Cir. 1993). Additionally, a plaintiff must allege specific facts supporting the claim of retaliation; bare assertions of retaliation do not establish a claim of constitutional dimension. Adams, 40 F.3d at 74-75.

Here, plaintiff has not alleged any specific facts to support his claim of retaliation, nor is there any evidence of retaliation. Further, there is no evidence that Powell violated plaintiff's Eighth Amendment rights. Thus, plaintiff's retaliation claim fails.

21

**CONCLUSION**

Based upon the foregoing, the court GRANTS defendants' motion for a protective order (DE # 67) and their respective motions for summary judgment (DE #s 74, 79, 82). The court DENIES plaintiff's motion to compel (DE # 71).

SO ORDERED, this the 19TH day of March, 2013.

LOUISE W. FLANAGAN
United States District Judge

22